Good morning, Your Honors. Dan Marmoletsky on behalf of Argoquest Holdings. The District Court in this case applied the wrong standard to its consideration of a motion to dismiss for forum nonconvenience. It failed to hold the defendant, Israel Discount Bank, to the Israel Discount Bank made no attempt whatsoever to satisfy. The standard is well settled as this Court wrote in Minegro v. Rosa. The question is whether the defendant has made a clear showing of facts which establishes such oppression and vexation of a defendant as to be out of wrote in Minegro v. Rosa applies with equal force here. The District Court misunderstood the standard. Rather than treating forum nonconvenience as an exceptional tool to be employed sparingly, the District Court perceived it as a doctrine that compels plaintiffs to choose the optimal forum for their claim. The only showing, if one even wants to call it a showing, by the court of the inconvenience to Israel Discount Bank of litigating in the Central District of California appears in paragraph 25 of the Rosenker affidavit where Mr. Rosenker declared I would be far more comfortable testifying in Hebrew rather than in English. That's it. That's the only inconvenience to the defendant of litigating in California. There's nothing in the evidence proffered by Israel Discount Bank to show that it can't, its witnesses would not be available in California, it wouldn't have access to compulsory process, nothing of the sort. And as the cases teach, from the plaintiff's perspective, we don't have to show any inconvenience. What's your best reason for having it here? Is that because you've chosen this forum or are there some? There are many reasons why the Central District of California is the appropriate forum. Yes, we filed this case originally in the Los Angeles Superior Court and then it was removed to the Central District. There is a lack of compulsory process to require third parties to travel to Israel. There are no depositions according to the unanimous agreement of the experts that are permitted in the Israeli system. There are some witnesses that either are unlikely or unwilling to travel to Israel for trial. There are many witnesses on key elements of the plaintiff's claims that are based in the United States. For Argo Press to prevail, it's going to have to show why it decided to proceed with financing through Israel Discount Bank. Well, didn't your client also agree that the laws of the State of Israel would be binding? That's not... It wasn't third... No, that's not correct. It's not correct? No. There is a forum selection clause that is contained in a foreign currency account agreement. Yeah. This case is not about the foreign currency account agreement. For a forum selection clause to apply, the defendant, presumably the party to invoke the clause, would have to admit that there was a binding credit agreement between the parties. The defendant, Israel Discount Bank, goes to great pains to make clear its contention that there is no binding agreement. First of all, in its motion below, its seven-page motion to dismiss, it says, quote, if the line of credit had been established. In the Resenquer Affidavit, paragraph 14, the application process could have culminated in a line of credit, had there been a... I thought your position was that they said there would be certain terms and conditions, and you fulfill the law, and you are entitled, I take it contractually, to a line of credit. Is that correct? There are eight causes of action that are raised in the complaint filed by ArgoQuest. The sixth cause of action is for breach of contract. The primary or the core claim here... And if they never agreed to do X for you, then how do any of your causes of action stand? So you talk to some people about making a deal, and they didn't make it. I take it that's what you're saying. They didn't agree to do it? They made no contract with you? They didn't agree to advance money, and yet you think you can sue them because they agreed to advance money, but... and that caused you not to try to get money from a different Israel, Israeli bank. Is that right? Is that your position? I'm trying to figure it out. Sure. Well, first of all, the merits of the claims have not been litigated. I'm not talking about the merits. I'm talking about what you claim. Right. What is claimed? You know what you claim? That they made a deal and agreed to give you money. That is one claim. That is not the first five claims of the complaint. And those? The essence of the claims is that in May 2001, unbeknownst to ArgoQuest, Israel Discount Bank had instituted a business plan, which it later documented in its public filings and was later confirmed in conversations from the IDB account representative to principals of ArgoQuest. I understand that, but so what if they never agreed to give you anything? No, it's not a question of not agreeing to give. It is if you fraudulently induce somebody to go forward with you and to forbear other credit arrangements that are available, and if, in fact, the court finds on the facts presented here that there was a duty to disclose those facts, then a cause of action for concealment or for fraud has been stated. The complaint alleges in paragraphs 32 and 33, that's page 8 of the excerpts of record, that IDB had instituted this undisclosed business plan, which it later revealed in its annual filings, in May 2001. The complaint goes on to allege that despite that business plan, IDB told ArgoQuest it was ready to issue a credit line, and in reliance thereon, ArgoQuest forbore from accepting credit and funding elsewhere. And that's in paragraphs 37, 57, 66, 73, 80, and 88 of the complaint. All claims that do not depend upon and that predate the credit line commitment. But they weren't required to do it. Let me just ask him a question. I'm sorry, I didn't hear your question.  Who wasn't required to do it? Israel. They weren't required to give you any credit line, right? They weren't required to talk to a prospective borrower. So they have some general policy, but they're talking to a prospective borrower, right? That's what you're saying. If the bank has a policy that it is... Had that established some kind of right that you had to get a credit line? If the bank has established a policy that it is not going to provide funding in one providing a credit line with a prospective customer, it knows that it's in competition with other sources of funding for that loan, and notwithstanding its policy that it's never going to give money, it says, come ahead, we want you to do business with us, we're going to beat anybody else's terms, go with us. Yes, I believe that that creates a cause of action in the plaintiff against the borrower. I understand your position. Let me ask you this, just as a practical matter. From what I read in the papers that we have, your client's business was worth somewhere, what was it, around $600 million? The investments that it made. And investments of about $63 million were made. Right. And so the mere fact that you didn't get a $3 million loan from one bank caused that whole thing to collapse? Well, I... That's a little far-fetched, isn't it? Well, in the first sense, of course, that's for adjudication. I understand all that. But no, I think the court is well aware that in the early part of this century, high-tech companies had significant value. And then the entire high-tech market, the NASDAQ index, collapsed. And you look at values of the NASDAQ exchange at the beginning of 2002, it was trading about $5,000, and now it went below $2,000 in about six months. And yes, the fact that they lost funding and that they were not able to honor commitments, and that when the market collapsed... Well, that this $3 million that they weren't able to get on a loan, is that when the market collapsed right at that time? Well, the market collapsed in 2002, yes. And when were they supposed to get this money? Well, the credit line commitment was issued in June of 2001. The first request to draw down on the line was made in September of 2001. And the collapse happened a year later, huh? Well, they were strung along for some period of time. Ultimately, they didn't get money. ArgoQuest attempted to raise money from other sources and has witnesses from HSBC, which it engaged to assist in its efforts to locate funding. Its interest holders, which included prominent American businessmen and companies such as Broadcom, Shamrock Holdings. And its members. And given the deteriorating conditions in the high-tech industry, they were not able at that point to raise funding. They did have opportunities to raise $7 million of financing in 2001 that were no longer available come 2002. But let me... Where all these negotiations, did they take place in the U.S. or in Israel? Well, with respect to the actual terms of the credit line agreement, to the extent that there were face-to-face discussions, the face-to-face discussions took place in Israel. But as your honors might expect, the drafting of the documents is generally done electronically. Communications are generally done by telephone. Some of the evidence lodged by Israel Discount Bank before the district court consists of e-mails with draft documents that were attached. There were some face-to-face meetings in Israel. There's some indication that Israel Discount Bank had a branch here in California. Was that during all those negotiations or was that subsequent to that? Israel Discount Bank had an office on Beverly Drive in Beverly Hills. According to the documents in the record, that branch closed on May 31, 2001. So subsequent to the internal decision made at the bank that it was not going to extend credit in the high-tech area. But they're not in business at all in California anymore? Israel Discount Bank does not currently have a facility in Southern California. They have a facility in the U.S.? I believe their subsidiary, Israel Discount Bank of New York, has operations in the United States. And they say that you put in the record a lot of people who would testify, but you didn't say what they were going to testify about. They said you just listed a group of people and the court can't really tell. They don't say that's material to your cause of action. Right. They do say that. Again, first of all, the burden on convenience or inconvenience was not on my client. It was on Israel Discount Bank. And the only thing that they said is we prefer to speak in Hebrew. But beyond that, what the Supreme Court said in Garfoyle v. Gilbert in 1947 on the precise issue of what evidence has to be presented concerning witnesses and what they will say, in Piper Aircraft v. Reno, the plaintiff, in opposition to the motion, criticized the showing of what witnesses would testify about that was made by the moving party. Quoting from the opinion, it said, So the moving party, which has the burden, doesn't have the burden of showing detail regarding the witnesses. What the moving party did in Piper Aircraft is it named the witnesses it would call and it showed their connection to the case. Relatives of the decedents. The person's responsible for maintaining the aircraft. The person's responsible for training. Two or three of its own employees. That's what they said. And the court said that that was sufficient. What we did here is we presented a list of 50 witnesses and showed their connection to the case. We also described what the claims were. The court, in its opinion, focused narrowly on one subject. Face-to-face discussions about the terms of a credit line agreement. It didn't focus on how the other elements of the plaintiff's claims would be proven. One of the things that ArgoQuest would have to show is why it decided to go forward with IDB rather than somebody else. Well, the people that made those decisions were the two managers of ArgoQuest who were the only people with authority to sign on its behalf who are from California. And the board of directors of ArgoQuest and all of those individuals are listed and they're all based in the United States. The unavailability of alternative funding sources. HSBC was retained. HSBC was not in Israel. Interest holders were asked for additional funds. The interest holders are listed. None of them reside in Israel. So the showing of where the witnesses were located at the time was more than amply provided in the evidence submitted to the court, bearing in mind again that there was no burden on my client to show that the balance of factors tipped in favor of the United States. The burden was on Israel Discount Bank to make a clear showing of oppression and vexation. It made no showing, much less a clear showing. Let me go back to an earlier question I asked you. This contract that was signed signed, I don't know whether it's the 17th day or the second month of 2001. Now that provides that the laws of the State of Israel apply. But you're arguing that that agreement never went into effect. No, Your Honor. Isn't that your argument? No, I'm saying that the clause in that agreement did not apply to the credit line discussions. Well, it's not clear to me. Okay, well, let me talk about the Foreign Selection Clause and then I'll come back and I'll talk about the question. Come and answer my question first because it's critical to me. Okay, that's fine. The Foreign Selection Clause says that the jurisdiction for purposes of conditions of operation You're talking about what paragraph now? Paragraph 15. Fifteen. Okay. Paragraph 15 of a foreign currency account agreement. This case is not about a foreign currency account agreement. But it says that the place of jurisdiction shall be the court of the city closest to the branch at which the account is maintained. So it's talking about an existing foreign currency account. That document also provides elsewhere in paragraph 41, which is on ER 69, the extent to which that document will apply to other arrangements between the parties. And that's where the issue is focused. And what paragraph? Paragraph 41A. 41A. Yes, it's on ER 69. I said the conditions and clauses of this agreement shall apply also to other accounts and or deposits of the customers or of any one or more of them, including the deposits mentioned above in the previous clause, hereof and also to all credit and or loans and or covenants and debts. And it goes on and on. Well, but the part that goes on and on is the relevant part. All right. Of the customers to the bank. So they're talking about when you're talking about an obligation from the customer to the bank. As the same are in force and shall be in force. So this case is not about, according to the plaintiff who has the burden, if they want to invoke a foreign selection clause. This case is not about an obligation that was in force. It is not about an obligation of ArgoQuest to the bank. So you're saying what you're saying is that this agreement really is of no force in effect because you never put any money in the bank. It's of no force according to the plaintiff. I'm sorry, the defendant who wants the benefit of that foreign selection clause. It only applies if there is a binding credit line commitment. And they go to great lengths to say there was never a binding credit line commitment. And as the court said in Evolution Online, which is the case cited by the district court below and relied on by IDB, if no contract exists, in this case, if there is no binding credit line commitment, the language of the foreign selection clause cannot logically deprive Evolution of its significant right of access to the courts. So they can't say we don't have an agreement, but the agreement we don't have has a foreign selection clause. They have to pick and choose. Either there's a binding agreement and they breach the obligation to pay $3 million on request to the plaintiff and suffer the consequences from the failure to honor that binding agreement, or as they studiously avoid saying, if their claim is that there was no binding agreement, they cannot invoke a foreign selection clause. Moreover, it's a very narrowly worded foreign selection clause. It's not a clause that says in any dispute that may hereafter arise between the parties. It doesn't say it applies to any claim arising from or in connection with or related to. It says it relates to credits or loans or covenants as the same are in force, and it relates to covenants or obligations of the customers to the bank. It's not mutual. Beyond that, even if there were a contract, even if IDB was making the claim, which it is not, that there was a binding contractual obligation to loan funds, this court made clear in Minetti-Farrell v. Gucci that you look at a foreign selection clause and in deciding whether it applies not only to a contract claim but also to tort claims, the question depends on whether resolution of the tort claims relates to interpretation of the contract. The tort claims presented in this case all predate the credit line commitment. Again, as I said earlier, they relate to the fact that in May 2001, before there was any credit line letter written by IDB, in May 2001, the bank made a decision it wasn't going to extend credit in this area, and the question presented in the first five causes of action is whether or not IDB is liable for consequences from its failure to disclose that internal decision that it was not going to be issuing any loans in the high-tech arena. Very briefly, there was a... Your time is way over. Okay. You've been briefed now. All right. I'll stop. Well, do you want anything else you want to say? I was just going to... There was a reference to the choice-of-law provision, and again, the choice-of-law provision would only apply if, in fact, there was a binding credit line commitment. The choice-of-law provision is in paragraph 38 of the Foreign Currency Account Agreement, which is at ER 67, and what that says is the laws of the State of Israel shall apply to this document, the foreign currency account, and the interpretation thereof. That's all it's talking about. It's not saying that if there's ever a dispute between the parties about anything, it's going to be governed by Israeli law. There is no dispute here about the handling of a foreign currency account. All right. Thank you very much. Thank you. Good morning, Your Honor. Sean Unger from Paul Hastings on behalf of Israel Discount Bank. This is a case that belongs in Israel. ArgoQuest alleges that an Israeli bank, Israel Discount Bank, whose majority position was owned by the State of Israel, failed to honor an alleged line of credit negotiated in Israel by Israelis in favor of ArgoQuest, a company that was created to invest in Israeli startups. ArgoQuest concedes that the core of its damage theory is that some other Israeli bank would have funded a line of credit. ArgoQuest concedes that all face-to-face negotiations occurred in Israel. ArgoQuest concedes that it currently is in Israel. And finally, ArgoQuest concedes that all of Israel Discount Bank's material witnesses are in Israel, that it would be unnecessarily burdensome for Israel Discount Bank to have to negotiate, to have to try this case in California when there is a controlling form selection clause, when Israeli law governs, and when all of Israel Discount Bank's material witnesses are in Israel, is patent on its face. They claim that you say that this form selection clause is not applicable because that credit agreement didn't get triggered. What about that? We would respectfully suggest that's entirely backwards. Having invoked the contract on a breach of... You have to work... You have to have deposits in the bank, don't you? You have to work first from the declaration of Mr. Rosenker that establishing a terms credit account with the bank was a necessary first step to negotiating a line of credit. So for ArgoQuest to have a potential line of credit, it first had to agree to this bank account. Then you work through paragraphs 38 and 41. Where does it say that? That's the declaration of Mr. Rosenker. It doesn't say that in the agreement, though. It doesn't say that expressly, but it says in paragraph 41 that the terms of the bank account will apply to all subsequent loans and debts. So you work forward, not backwards. You don't have to presume that the line of credit exists. Instead, as the plaintiff alleges that there is a breach, you have to presume based on their theory that a credit line exists and then work from there to figure out whether the form selection clause, Mr. Rosenker declares, and it's uncontested, that it is a policy of Israel Discount Bank that you must first establish the bank account before you can do the line of credit. So having alleged that the line of credit exists, they concede that this document also exists, and then paragraphs 41, 38, and 15 would govern. Did they have a bank account? That's what the contract at the back of the Rosenker Declaration, which our request was quoting from at length, is. It is the bank account that they created so that they could negotiate a possible line of credit. There was a bank account. There was a bank account. There's a difference between a bank account and a credit line. The way that Israel Discount Bank funds a credit line is that once a bank account is established, if a subsequent credit line is created, the money is deposited in the account. So it presumes a banking relationship. So how much money was in the bank account? I have no idea, Your Honor. And as a matter of fact, in law, it would be irrelevant because they allege that there was a contract that we didn't fund. But by alleging the existence of the contract, they therefore have to agree to all of its terms by their allegations, which would include the choice of law provision, which would include the form selection clause provision, and which would include paragraph 41, which extends the contract through. What about their alternative argument? They say, whoops, there was no contract. And the reason there was no contract was that you committed a tort, and that's why there was no contract. And therefore, since there's no contract, none of this applies. Well, that's belied by the sixth allegation, cause of action alleged in the complaint, which is a breach of contract. But assuming that the breach of contract doesn't exist, then what's to stop a bank from changing its policy all the time? You must assume that there was a belief that they would fund a line of credit to get to the fraud. The fraud is you're stringing me along, you're not going to fund my line of credit, you've changed your policies, but you have to get to the ultimate event, which is that there would be an agreement to fund a line of credit. Businesses are allowed to change their policies all the time. It's only with a tying to the contract claim that you get to the level of fraud. And I might add that neither myself nor Mr. Marmolevsky, I would presume, and I apologize for speaking for him, are Israeli law experts. That would be a question of Israeli law that a court in Israel would be best served to resolve. The fraud, if it ever occurred, would have occurred in Israel. Now, this was not, in fact, a motion to enforce the Foreign Selection Clause, was it? It was a foreign non-convenience motion, which is a different animal, I believe. There were three motions before the court. There was a motion to dismiss based on the Foreign Sovereign Immunities Act. There was a motion to dismiss based on foreign non-convenience. And there was a motion to dismiss based on the Foreign Selection Clause. But that's not in front of us, correct? It's not, but the court did find that there was a binding agreement, a binding Foreign Selection Clause, and it's a longstanding rule in this court that you can affirm on any ground supported in the record. The court didn't pass on that first motion, did it? The Foreign Sovereign Immunities Act? Yes. No, it did not. Again, the court, in the very first paragraph of its order, finds that Israel Discount Bank is owned greater than 50 percent by the State of Israel. So, again, as a practical matter, we're talking about sending a case back to the district court for it to dismiss it again on a form, a controlling form selection clause that it's already found and based on the Foreign Sovereign Immunities Act, which it already noted. Just tell me quickly, where did it grant that motion? Where did it grant the motion? The motion to dismiss on a form selection clause basis. No, no, it didn't. It did not grant that motion. It did not grant it. Correct? But the form selection clause is still clearly relevant under a line of jurisprudence in the Seventh Circuit. I'm not saying it's not relevant. I said if the court did not in fact decide to dismiss on form selection clause grounds, did it? No, it did not. That's a different animal, isn't it? There's a different body of jurisprudence that governs it, yes. Well, I mean more than that. I mean, you have to take jurisdiction in order to decide what a contract term means, I do believe. Do you not? I'm not sure that's correct. Under the recent line of Supreme Court jurisprudence in Senecam and in Ruergas, and I believe it's not. The Supreme Court said you don't have to do it before a nonconvenience, I believe. That's correct. There's a Fourth Circuit opinion, which I'd be happy to submit to the Court. The Supreme Court. Let's talk about the Supreme Court. No, no. It's not been before the Supreme Court. I would concede that. The Supreme Court said that you don't have to decide jurisdiction first if you decide form nonconvenience because it's almost an alternative to jurisdiction, right? That's correct. But at the time that the Court decided the motion, that had not been addressed by the Supreme Court. The Supreme Court has responded subsequently in Senecam. And the developing line of jurisprudence in Tenet and a case that begins with Z that goes on for a long time that I won't attempt to mispronounce in the Supreme Court is expanding the Ruergas line of jurisprudence on the number of issues that the Court can address. And there's a Fourth Circuit opinion, which I'd be happy to submit on a 28-J on the Foreign Court. That's not necessary. That's not my point. The question is the district court here didn't really decide, I don't think, the complete scope of that clause, did it? Because it didn't have to decide the forum selection issue in the long run. I'm not saying it has no relevance to form nonconvenience. But it is an unusually drawn forum selection clause and also a choice of law clause. And I believe that the choice of law is Israeli law, so one would have to play Israeli law to decide the scope of the forum selection clause. Isn't that right? Certainly. Perhaps. Certainly. That's why the Court reached the forum nonconvenience question, because as this Court held in Leach where you have to apply foreign law, that's a strong indication that you should grant a forum nonconvenience motion. What does it say, you have to apply the foreign law? You have to, again, work together with paragraph 41 and paragraph 38 of the terms and conditions. Paragraph 41 says that the terms and conditions of the entire agreement apply to loans and credits and a whole bunch of other things. And then you work to paragraph 38, which gets you to the choice of law, which is designated as Israeli law. And the fact that no deal was ever made, no line of credit was ever extended, that's irrelevant. I'm sorry? Is that your position? That an alleged line of credit was? It was not extended. The line of credit was never extended. Your position is that that forum selection clause still applies? Well, it's always the case with forum selection clauses that you apply the forum selection clause, even when there's been an allegation of a breach that's defended. And we have a right to say that we didn't agree to fund the line of credit. What's material is that the plaintiff alleges that we did promise to fund the line of credit. And having made that allegation, they have to abide by all the terms that come with that, which would include the terms and conditions, which would include the forum selection clause, which would include the choice of law clause, which would include having Israeli law apply, which would include having material witnesses and Israeli experts. Well, they're in a catch-22. Well, no, they're not in a catch-22, only to the sense that wanting to have the case heard in California, they can't do that having alleged a breach of contract claim. But they aren't precluded from trying this case in Israel. This case will yet to be determined on its merits in Israel by an Israeli court. Israel Discount Bank is involved in litigation process in Israel, as you might imagine, for a bank all the time. So they are in a catch-22 only in the sense that they don't get their preferred forum of California. They get their contractually obligated forum in Israel, and they also get the forum where it makes all the sense to have it resolved. All of Israel Discount Bank's witnesses are in Israel. The banks it alleges that it would have relied on for an alternative line of credit are in Israel. It is in Israel. Its agents who negotiated the agreement are in Israel. Its lawyer who initially set up the contact with the bank is in Israel. Everything of consequence with respect to this alleged line of credit occurred in Israel. So both on the forum selection clause as a matter of law and a matter of contract allegation and on forum nonconvenience as a matter of practicality and convenience, this case should be heard in Israel. When does this deference we give to a plaintiff to present the case where it chooses, is it overcome by something else? And what is your strongest evidence here to show that it should be moved to Israel? Well, I have two questions in one, and I have two answers to the first part and one answer to the third. Just take the first one. All right. The first part is that the district court here did apply this court's deferential standard under Lockman, which says the Israel Discount Bank needed to demonstrate that it would be unnecessarily burdensome to litigate the case in Israel. There's some confusion with an id cite at page 435 of the court's order. Excuse me, page 435 of the record. The court cites id after a Bank of Israel case, but it's actually quoting page 767 of Lockman and says in the Ninth Circuit. So the court applied Lockman, this court's jurisprudence in Lockman, which quoted Piper, the Supreme Court's jurisprudence in Piper, holding that if it is unnecessarily burdensome to have the case resolved here, the case should be dismissed on forum nonconvenience. We would submit that the case should be dismissed because Israel Discount Bank's material witnesses are in Israel, the events occurred in Israel, Israel law would govern, the alternative third-party banks upon which our request's damage theory relies are in Israel, etc., etc., etc., down the line. It's not our burden to say oppressive and vexatious in those magic words. That would just be a statement of opinion. We've demonstrated that all of the material events, we are in Israel and would have to come here, which would create an unnecessary burden. That said, the deference that applies gets diminished where there is negotiations with respect to a forum selection clause. There is no deference. It's an equipost. Once a forum selection clause is introduced into the negotiations and tacitly agreed, that's what the Second Circuit held in Evolution, the Seventh Circuit noted in AAR, and a long line of jurisprudence has already held. So the crux of your argument is that given the forum selection clause and the provision that Israel law applies, those are your two really strongest arguments for having the matter go to Israel. I would say that those are two strong indications. I wouldn't say that they certainly are strongest. What if they were eliminated? I think that this case should still be dismissed on forum nonconvenience, which is what the district court almost said by applying the unnecessary burdensome standard. If you look at what the district court does, it quotes Lockman, which quotes Piper, and says the standard to apply is whether it's unnecessarily burdensome for the defendant to have to come thousands of miles and litigate a case where the forum has no connection to the case as alleged. Well, the forum has some connection because you had a branch of the bank here in Beverly Hills. But that branch has nothing to do with the claims. No negotiations went on with that branch. All negotiations occurred in Israel. Mr. Barzilay, the CEO of ArgoQuest, went to Israel to negotiate with Israel Discount Bank, indeed went to Israel to initiate the negotiations. There are some allegations that prior to the- What did they have the branch here for? Well, Israel Discount Bank at one time did have a business in the United States, but that has no connection to this case. And, indeed, they stopped doing business in the United States before the alleged line of credit was agreed to. That's what I was going to ask you. I understood that this entity did not have that branch. The entity that has a branch is the entity in New York. Correct. The ongoing entity is Israel Discount Bank of New York, which is a subsidiary and has nothing to do with the case. As a matter of fact, it's not related except by name and subsidiary considerations. It's not related to this case. Is that correct? Correct. That's correct. It's all part of the same family. Well, then you have to overturn Doe and Unocal. The alter ego test was not even attempted in the briefs. A subsidiary that truly is a subsidiary, which is here, has to be respected. And, indeed, Mr. Barzilai, in our request, went to Israel to negotiate with Israel Discount Bank Limited. They didn't go to New York to negotiate with Israel Discount Bank of New York. And that's because they were doing business in Israel and wanted to have a relationship with the parent, Limited. Again, as a practical matter, Your Honor, we would suggest that the form of nonconvenience motion was aptly demonstrated and aptly applied by the district court below. Assuming or not assuming the presence of the form selection clause, we think it would prevail either way. But we would also note that there is a controlling form selection clause, and the case also presents an FSIA issue, so there's no real need to render a moot question moot. The district court could have dismissed on any number of grounds, and there's no reason to make it do so here. If there are no further questions, then. All right. Thank you. I'll give you a minute for rebuttal. Your Honor, there is not a single case cited by Israel Discount Bank in its brief that supports the view that a form selection clause applies in the absence of an admission that there is a binding contract. There is no admission here that there is a binding credit line obligation of Israel Discount Bank. Without such a binding obligation, Israel Discount Bank may not invoke a form selection clause in a nonexistent contract. Mr. Unger talks about how it was unnecessarily burdensome to his client. The word burden, inconvenient, much less oppression or vexation, appears nowhere in the evidence that they proffered to the court. They had the obligation of showing oppression, vexation unnecessarily burdensome. Yes, they have witnesses that are located outside the Central District of California. I would guess that most cases in the Central District of California have witnesses that are located outside. That's not enough to show a burden. They didn't present any evidence. Mr. Unger didn't say anything about how this foreign selection clause in the contract that they claim doesn't exist would apply to tort claims under Minetti-Ferro. If there are tort claims, a form selection clause is irrelevant unless the tort claims are based on an issue of contract interpretation, which is not presented here. The Foreign Sovereign Immunities Act was not briefed before this Court. They did not ask in their respondent brief for this Court to rule in their favor on an alternative ground. Yes, Judge Fernandez is correct. All that the Court said below with respect to the foreign selection clause was that it was a strong factor. He did not – the Court did not make a dispositive ruling that, in fact, the foreign selection clause applies to all of the claims presented here. Of course, if you went on this case here, it goes back down. The district court will have to decide at least one of those two issues, right? Or maybe both. Yes. Should they be renewed, yes. Well, it's interesting how this bank was prescient to the extent that its fears about the high-tech industry turned out to be correct. Well, some of us invested in 2002 and weren't quite so prescient, but yes. Yeah. So, all right, we'll conclude this session of the Court, and we'll recess until 9 a.m. tomorrow morning. Thank you. Thank you.
judges: Pregerson, Fernandez, Siler